IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01116-WYD-MEH

UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,

    Petitioner,

v.

COLORADO BOARD OF PHARMACY,

    Respondent.

---

## RECOMMENDATION ON PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is a Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration [filed May 13, 2010; docket #1]. In accordance with 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for report and recommendation. Docket # 5. The petition is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. Based on the record contained herein, the Court RECOMMENDS that the petition be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## I. BACKGROUND

Petitioner seeks an order of the Court enforcing three administrative subpoenas issued by the U.S. Drug Enforcement Administration (DEA) to the Colorado Board of Pharmacy (Board) concerning its ongoing investigations of three "registrants" for possible misconduct in violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* The subpoenas are identified by numbers MK-10-355808, MK-10-318078 and MK-10-358862. The following unrebutted facts are taken from the petition, the attached declarations and the response to the petition.

### A. Subpoena #MK-10-355808

The DEA initiated an investigation of DEA Registrant #1's activities in connection with issuance of prescriptions for an internet company, and receipt and possible mishandling of an inventory of controlled substances that are controlled pursuant to the Controlled Substances Act. In connection with that ongoing investigation, on April 5, 2010, the DEA issued Subpoena No. MK-10-355808 in case no. MK-09-2016 to the Board. The subpoena seeks a physician summary of all controlled substance prescriptions issued by DEA Registrant #1 for the time period March 1, 2008 through April 5, 2010. This information is collected and maintained by the Board in connection with the prescription drug monitoring program ("PDMP"). The return date for the subpoena was April 16, 2010. A representative of the State of Colorado has informed the DEA that the State does not intend to respond to the subpoena without a court order requiring it to respond.

### B. Subpoena #MK-10-318078

The DEA initiated an investigation of DEA Registrant #2 in connection with the possible misuse of DEA Registrant #2's DEA registration number by persons not authorized to use that number for the treatment of patients the registrant did not personally examine. In connection with the ongoing investigation of DEA Registrant #2, on March 19, 2010, the DEA issued Subpoena No.

MK-10-318078 in case no. MK-10-2032 to the Board seeking the physician summary for the controlled substance prescriptions issued by DEA Registrant #2 for the time period March 1, 2008 through March 1, 2010. This information is collected and maintained by the Board in connection with the PDMP. The return date for the subpoena was March 30, 2010. A representative of the State of Colorado has informed the DEA that the State does not intend to respond to the subpoena without a court order requiring it to respond.

  C. Subpoena #MK-10-358862

The DEA initiated an investigation of DEA Registrant #3, a physician's assistant, in connection with issuance of prescriptions in Colorado under an expired DEA registration number from another state. DEA Registrant #3 has no Colorado DEA registration number and is not authorized to issue prescriptions in this state. In connection with the ongoing investigation of DEA Registrant #3, on April 6, 2010, the DEA issued Subpoena No. MK-10-358862 in case no. GFMK-10-9057 to the Board seeking the physician summary for controlled substance prescriptions issued by DEA Registrant #3 for the time period November 1, 2009 through April 5, 2010. This information is collected and maintained by the Board in connection with the PDMP. The return date for the subpoena was April 19, 2010. A representative of the State of Colorado has informed the DEA that the State does not intend to respond to the subpoena without a court order requiring it to respond.

**II. DISCUSSION**

The Board contends that, pursuant to Title 12, Part 7, Colo. Rev. Stat. §§ 12-22-701 through 709 ("Electronic Monitoring of Prescription Drugs"), it is not permitted to release information from the PDMP to law enforcement officials unless the information requested is specific to an *individual* (interpreted as, "patient"), rather than to a prescriber. The Board asserts that it may not respond to

the subject subpoenas because they request information specific to prescribers, rather than to patients.

Section 12-22-705(3) governs access to the PDMP, which allows release of information only to Board staff, licensed practitioners and the following relevant persons:

(e) Law enforcement officials so long as the information released is specific to an individual and is part of a bona fide investigation and the request for information is accompanied by an official court order or subpoena; and

(f) The individual who is the recipient of a controlled substance prescription so long as the information released is specific to such individual.

Colo. Rev. Stat. § 12-22-705(3)(e) (2010). Section 12-22-707 assesses a fine of not less than one thousand dollars and not more than ten thousand dollars to anyone who knowingly releases, obtains or attempts to obtain information in violation of the PDMP. Colo. Rev. Stat. § 12-22-707 (2010).

For support of its interpretation of "individual" in the statute, the Board points to the legislative declaration: "Electronic monitoring of prescriptions for controlled substances would provide a mechanism whereby prescribers could discover the extent of each patient's requests for drugs, and whether other providers have prescribed similar substances during a similar period of time. Colo. Rev. Stat. § 12-22-701(c) (2010).

DEA counters that its administrative subpoena power pursuant to the Controlled Substances Act (CSA) preempts any Colorado law that hinders its ability to enforce federal drug laws.

The fact that "Congress has the power to preempt state law" is a fundamental principle underlying the Supremacy Cl4ause of the U.S. Constitution. *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008) (citing *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372 (2000)). Preemption of state law by federal law may be apparent from the express terms of the

4

federal statute or it may be implicit in the statute. *Id.* (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 203-04 (1983)). "Implicit preemption of state law may occur in at least two circumstances, when: (1) Congress intends federal law to 'occupy the field,' or (2) state law is naturally preempted to the extent it conflicts with a federal statute." *Id.* (citing *Crosby,* 530 U.S. at 372). Conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility" or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 766-67 (10th Cir. 2010) (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982)) (internal quotation marks and citations omitted).

No party here argues that the CSA expressly preempts the PDMP. Thus, in determining whether the CSA implicitly preempts state law, the Court must look to principles of statutory construction. *Russell*, 551 F.3d at 1178. "In any preemption analysis, congressional intent is the 'ultimate touchstone.'" *United States v. Wagoner Cnty. Real Estate*, 278 F.3d 1091, 1096 (10th Cir. 2002) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)); *see also United States v. Manning,* 526 F.3d 611, 614 (10th Cir. 2008), *cert. dismissed*, 2008 WL 4656882 (Dec. 19, 2008) ("[i]t is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction."). In ascertaining such congressional intent, the Court must examine the plain language of the statute, and "[i]f the statutory language is clear, [the] analysis ordinarily ends." *Manning*, 526 F.3d at 614.

The CSA provides:

No provision of [the Act] shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision ... and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. Clearly, Congress did not intend to occupy the field with respect to regulating controlled substances; therefore, the issue before the Court is whether Colorado's PMDP statute conflicts with the federal CSA.

DEA Diversion Investigators issued the subpoenas in this case pursuant to 21 U.S.C. § 876(a). This section of the CSA provides the Attorney General with broad power in drug investigations to "subpena [sic] witnesses, compel the attendance and testimony of witnesses, and require the production of any records ... which the Attorney General finds relevant or material to the investigation." 21 U.S.C. § 876(a). However, the subject of an administrative subpoena may challenge the subpoena before yielding information. *United States v. Sturm, Ruger & Co.,* 84 F.3d 1, 4 (1st Cir. 1996). Under the Fourth Amendment, the target of an administrative subpoena is entitled to a judicial determination that (1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena. *Id.* (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). "As long as the agency satisfies these modest requirements, the subpoena is per se reasonable and Fourth Amendment concerns are deemed satisfied." *Id.*

Here, the Board does not bring a Fourth Amendment challenge *per se*,[2] but contends the subpoenas are unreasonable because they require the Board to release information it is not permitted to disclose by law. The Board does not dispute that the subpoenas were authorized, properly served and contain an adequate description of information relevant to the investigations. Upon review of the subpoenas, the Court finds that they meet Fourth Amendment requirements and are per se

---

[2] In fact, the Board does not raise privacy concerns either for itself or for the prescribers listed in the subpoenas.

reasonable.[3]

However, this does not end the analysis. Pursuant to the access provision of the PDMP, prescription drug use information may be released to law enforcement officials only "so long as the information released is specific to an individual." Colo. Rev. Stat. § 12-22-705(3)(e). To the extent the provision is interpreted to mean "specific to a *patient*," such restriction stands as an obstacle to the DEA's efforts to accomplish its investigation, through the subpoena process pursuant to 21 U.S.C. § 876, of potential violations of the Controlled Substances Act. *See Edmondson*, 594 F.3d at 769 (state law is preempted "if it interferes with the methods by which the federal statute was designed to reach [its] goal") (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)); *see also de la Cuesta*, 458 U.S. at 155-56 (state law conflict preempted where it limited the availability of an option provided by a federal regulation, which the federal agency considered "essential to the economic soundness of the thrift industry"); *Franklin Nat. Bank v. New York*, 347 U.S. 373, 378 (1954) (state law conflict preempted where it prevented national banks, authorized by federal law to receive savings deposits, from using the word "savings" in their advertising or business).

The DEA contends that it cannot otherwise obtain the information sought in the subpoenas, except by overly burdensome and time-consuming means (*i.e.*, the DEA would be required to contact and search the records of more than 800 pharmacies located in Colorado for information on the three registrants). Conversely, the Board makes no indication that its search of the records for the requested information would be impossible or burdensome. Thus, the DEA's only bar to

---

[3]The DEA states that "[t]he subpoenaed records will assist the DEA in determining whether any of the three DEA registrants engaged in criminal or administrative misconduct." Docket # 1 at 4-5. Although some courts have held that administrative subpoenas seeking evidence in a criminal investigation need demonstrate probable cause (*see, e.g., In re Subpoenas Duces Tecum*, 51 F. Supp. 2d 726, 734 (W.D. Va. 1999), the Tenth Circuit has held that administrative subpoenas need not be supported by probable cause. *Becker v. Kroll*, 494 F.3d 904, 916 (10th Cir. 2007) ("Under Fourth Amendment law, an investigatory or administrative subpoena is not subject to the same probable cause requirements as a search warrant.") (citing *See v. City of Seattle*, 387 U.S. 541, 544 (1967)).

obtaining the requested information from the PDMP is the state law's restricted access provision, to the extent that the term "individual" is interpreted as "patient." Consequently, the Court recommends finding that the access provision of the PDMP at Colo. Rev. Stat. § 12-22-705(3) conflicts with, and is preempted by, 21 U.S.C. § 876(a).

## III. CONCLUSION

Accordingly, the Court RECOMMENDS that the District Court **grant** the Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration [filed May 13, 2010; docket #1] and order the Colorado Board of Pharmacy to respond to subpoenas #MK-10-355808, #MK-10-318078 and #MK-10-358862 within 14 days after the date of the District Court's order.

Respectfully submitted at Denver, Colorado, this 13th day of August, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge